**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| REBECCA J. DISKERUD, )<br>)<br>       Plaintiff, )<br>   vs. ) 1:07-cv-1231-SEB-JMS<br>)<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br> of the Social Security Administration, )<br>)<br>       Defendant. ) | |

**ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW**

Rebecca J. Diskerud ("Diskerud") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further consideration.**

**I.  BACKGROUND**

Diskerud filed applications for DIB and SSI on January 29, 2004, alleging an onset date of disability of May 17, 2002. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on March 12, 2007. Diskerud was present, accompanied by her attorney. Medical and other records were introduced into evidence, and Diskerud and a vocational expert testified at the hearing. The ALJ issued a decision on May 22, 2007, denying benefits. On October 16, 2007, the Appeals Council denied Diskerud's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Diskerud met the insured status requirements of the Act through December 31, 2007; (2) Diskerud had not engaged in substantial gainful activity since May 17, 2002, the alleged onset date; (3) Diskerud had the following "severe" impairments: neck pain, knee pain, asthma, and fibromyalgia; (4) Diskerud did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Diskerud had the residual functional capacity ("RFC") to perform light activities: she could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and/or walk a total of six hours of an eight hour work day, sit for six hours of an eight hour work day, had unlimited ability to push and/or pull objects, should not perform rapid neck movements, should be in an environment that is relatively free of noxious fumes, gases, respiratory irritants, and extremes of temperature and humidity, and should be allowed one day off a month; (6) Diskerud was able to perform past relevant work; (7) Diskerud was born on September 2, 1948, and was fifty-four years old, which is defined as an individual closely approaching advanced age, as of the alleged disability onset date; she was fifty-eight years old at the time of the ALJ's decision, which is defined as an individual of advanced age; (8) Diskerud had at least a high school education and was able to communicate in English; (9) Diskerud had acquired work skills from past relevant work; and (10) considering Diskerud's age, education, work experience, and RFC, she had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Diskerud had not been under a disability as defined in the Act from May 17, 2002, through the date of the ALJ's decision.

## II. DISCUSSION

### A. Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the

> regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision is supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.   Analysis

In this case, the ALJ determined that Diskerud had severe impairments consisting of neck pain, knee pain, asthma and fibromyalgia, but that she could perform her past relevant work as well as a significant number of sedentary exertional level jobs. Diskerud argues that the ALJ's decision is not supported by substantial evidence.

### 1.   Listings

Diskerud first argues that the ALJ erred at step three by failing to cite or discuss any listing.[1] The ALJ did not discuss any listing by name, other than to refer to the "mental disorders listings." (R. at 19). Diskerud contends that her impairments met or equaled eight different listings: 1.02A (arthritis), 1.04A (cervical disc disease), 2.07 (disturbance of labyrinthine-vestibular function), 2.08 (hearing impairment), 3.02 (chronic pulmonary insufficiency), 3.03 (asthma), 12.04 (affective disorders), and 12.06 (anxiety related

---

[1] Diskerud's contention that the ALJ's decision violated her due process rights is not supported by any examples of extreme conduct or partiality which rise to the level of fundamental unfairness and therefore, warrants no further discussion. *See Keith v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007).

disorders).[23]

The ALJ stated that after evaluating all of the objective evidence of record, he concluded that none of Diskerud's severe impairments, singly or in combination, met or equaled the criteria for any listing. (R. at 20). The Commissioner contends that the ALJ properly relied on medical advisor opinions (in the form of State Agency physicians in 2004), in determining that Diskerud's impairments did not meet or equal the criteria of any listing. The ALJ, however, did not rely on State Agency records as suggested by the Commissioner. (R. at 16, 34, 36). Rather, the ALJ cited to a rheumatology evaluation, the 2007 MRI, and a 2007 report indicating the need for a hearing aid. (R. at 16). Even if the ALJ had relied on State Agency opinions to support his step three finding, much of the relevant evidence was not of record at the time of the State Agency review.

The court finds persuasive Diskerud's allegation that the ALJ failed to adequately discuss the evidence of her spinal disorders.[4] In October 2004, a consulting examining physician Dr. Kassab reported that Diskerud had limitations in range of motion of her cervical spine and he recommended further evaluation by x-rays. (R. at 166). In 2004 and 2005, Diskerud reported numbness in her left knee and hands and in her right upper extremity. (R. at 17-18, 164, 222, 282). The ALJ noted that a March 2007 cervical spine MRI showed degenerative changes of the cervical spine with moderate central canal stenosis and severe foraminal stenosis, and that a cervical collar was prescribed with ambulation. (R. at 18, citing 294-96). No medical expert or consultant had an opportunity to review the record after the March 2007 MRI was submitted. In addition to failing to discuss Listing 1.04A, the ALJ's mere citation to this MRI report and the other evidence relating to Diskerud's spinal disorder without any evaluation thereof, is insufficient. To conduct meaningful review, the court "must be able to trace the ALJ's path of reasoning."

---

[2]The ALJ's conclusions at step three with respect to Diskerud's mental impairments (Listings 12.04 and 12.06) are supported by the findings of State Agency psychologists, even though the ALJ rejected the State Agency findings as to Diskerud's specific limitations in daily activities and concentration, persistence and pace. (R. at 19-20, 139-156). Additional issues relating to Diskerud's mental impairments will be addressed in Part II. B. 2. of this Entry.

[3]To the extent Diskerud's position is that certain diagnoses such as "dizziness" and "hearing loss" prove disability under Listings 2.07 and 2.08, this falls far short of meeting her burden of proof that such impairments met all of the criteria of the applicable listings.

[4]Listing 1.04A provides:  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

4

*Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000). Under these circumstances, the ALJ has failed to "provide a logical bridge between the evidence and his conclusions." *Getch,* 539 F.3d at 480.

For similar reasons, the court cannot ascertain whether the ALJ adequately considered Diskerud's pulmonary impairment in the context of Listing 3.02. The ALJ referenced a pulmonary function test conducted in May 2004, but stated that Diskerud "refused to complete" the test. (R. at 16). Substantial evidence does not support this characterization. Rather, the technician stated that after Diskerud completed some trials, she "was unable to continue testing due to cough, SOB [shortness of breath], and stated anxiety attack." (R. at 223). Diskerud had to use her albuterol inhaler, and after she did so, the technician told her that "testing had to be terminated at this point." *Id.* There is no evidence that Diskerud "refused" to continue testing. No medical source offered an opinion as to whether the FEV1 or FVC test results satisfied the criteria of Listing 3.02.[5]

"ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). The

---

[5] 3.02 Chronic pulmonary insufficiency:
A. Chronic obstructive pulmonary disease, due to any cause, with the FEV1 equal to or less than the values specified in table I corresponding to the person's height without shoes. (In cases of marked spinal deformity, see 3.00E.);

Table I  Height without shoes (centimeters) Height without shoes (inches) FEV1 equal to or less than (L, BTPS)
154 or less 60 or less 1.05
155-160 61-63 1.15
161-165 64-65 1.25
166-170 66-67 1.35
171-175 68-69 1.45
176-180 70-71 1.55
181 or more 72 or more 1.65
Or
B. Chronic restrictive ventilatory disease, due to any cause, with the FVC equal to or less than the values specified in table II corresponding to the person's height without shoes. (In cases of marked spinal deformity, see 3.00E.);

Table II  Height without shoes (centimeters) Height without shoes (inches) FVC equal to or less than (L, BTPS)
154 or less 60 or less 1.25
155-160 61-63 1.35
161-165 64-65 1.45
166-170 66-67 1.55
171-175 68-69 1.65
176-180 70-71 1.75
181 or more 72 or more 1.85

ALJ's failure to mention these listings, combined with a perfunctory analysis in light of the evidence provided, compels a remand. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) ("an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a perfunctory analysis, may require a remand") (internal quotation omitted). Under these circumstances, the court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's reasoning. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning") (internal quotation omitted). On remand, in conducting his step three determinations the ALJ shall obtain and weigh medical expert opinion. The ALJ shall discuss the evidence and articulate his reasoning as to whether Diskerud's impairments met or equaled relevant listings at step three.

### 2.     Step Four and Step Five Analyses

Diskerud asserts that the ALJ's credibility determination at step four is patently erroneous because it is contrary to Social Security Ruling ("SSR") 96-7p. Although the ALJ's credibility determination is entitled to deference, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *see also Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) (pursuant to SSR 96-7p, ALJ must "articulate the reasons behind credibility evaluations").

The ALJ recited the various factors pursuant to 20 C.F.R. §§ 404.1529(c), 416.929(c) and SSR 96-7p, and concluded that Diskerud's testimony of severe neck pain was "not entirely consistent with the medical evidence." (R. at 20-22). Diskerud stated that she could sit only about twenty minutes, she could stand less than 10 minutes, and could walk about one block. (R. at 22). The ALJ determined that Diskerud could stand and/or walk for six hours in an eight hour day and could sit for six hours in an eight hour day. (R. at 23). As discussed above, no medical source opined what the 2007 MRI, showing marked degenerative changes with moderate central canal stenosis and severe foraminal stenosis (R. at 294-95), and other evidence relating to neck and knee pain, suggested in terms of functional limitations. The ALJ noted evidence of decreased range of motion in the cervical spine and evidence supporting Diskerud's knee pain (R. at 21), but did not articulate how such conditions would permit Diskerud to sit, stand and walk six hours a day. The ALJ's conclusion that Diskerud's testimony of neck pain was not consistent with the medical evidence is not supported by substantial evidence.

Diskerud further contends that the ALJ's decision is not supported by substantial evidence because the ALJ relied only on evidence that favored his decision. Diskerud argues that the ALJ ignored or rejected all of the evidence supporting disability. In addition to the court's inability to trace the path of the ALJ's findings in relation to Diskerud's rheumatological impairments, the court finds this argument persuasive as it relates to Diskerud's mental impairments.

6

The ALJ reviewed the record and determined that Diskerud's mental impairments were not severe. (R. at 24). No medical source, however, found that Diskerud's symptoms of depression and anxiety attacks were exaggerated. Diskerud testified that she experienced severe panic attacks and anxiety and claustrophobia in groups of people or in elevators. (R. at 312-13). As noted by Diskerud, in 1998 her physician reported a history of depression and described her depression as "severe to extreme." (R. at 173). She was ordered to stay off work until she was seen again in a week. *Id.* Consulting physician Dr. Kassab, on October 9, 2004, noted that Diskerud was experiencing full blown symptoms of depression, but was not taking any medication at that time because she could not afford it and it had made her worse. (R. at 164, 166). Diskerud's symptoms included severe insomnia, crying spells, depressive moods, loss of concentration and forgetfulness. (R. at 164). Further evaluation by a psychiatrist was recommended. *Id.*

In October 2004, consulting examiner Dr. Buonanno concluded that Diskerud had panic disorder with intermittent panic and anxiety attacks, and major depression, recurrent moderate to severe. (R. at 19, 159-60). The ALJ rejected Dr. Buonanno's opinion in its entirety because the ALJ decided that the opinion appeared to be based on Diskerud's subjective complaints, not objective medical evidence. (R. at 19). The ALJ also noted that State Agency medical consultants concluded that Diskerud had an affective disorder and anxiety-related disorder. (R. at 19, citing 143). Because the ALJ believed the State Agency opinion was based on the findings of Dr. Buonanno and that Dr. Buonanno's findings were based solely on Diskerud's subjective reports, the ALJ rejected the opinions of the State Agency consultants. *Id.* This domino effect is of concern because the State Agency consultants themselves did not find Dr. Buonanno's findings baseless. In addition, no other mental health expert concluded that the opinions of Dr. Buonanno and the State Agency consultants were invalid. Again, the ALJ has improperly "played doctor" by rejecting the report of Dr. Buonanno and the State Agency consultants under these circumstances.

There is evidence of record that antidepressants had not been effective and had in fact, made the symptoms worse. (R. at 17, 220). Even if Diskerud's mental impairments had gone untreated to a large degree, the ALJ may not ignore evidence of such impairments when presented in the form of substantial, uncontradicted evidence. The State Agency consultants, for instance, found that Diskerud had moderate restrictions in activities of daily living and moderate difficulty maintaining concentration, persistence, and pace. (R. at 19). None of these symptoms were incorporated into the ALJ's evaluation of Diskerud's RFC or in the hypothetical question posed to the vocational expert.

On remand, the ALJ shall reconsider his findings relative to Diskerud's credibility, in particular, her allegations of pain and the symptoms caused by her mental impairments. On remand, the ALJ shall articulate the weight given to the evidence of Diskerud's pain and depression and anxiety, and as appropriate, incorporate such determinations in his RFC assessment and hypothetical questions posed to the vocational expert.

The ALJ must build an accurate and logical bridge between the evidence and the result to permit meaningful judicial review of the administrative findings. *Ribaudo,* 458 F.3d at 584; *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir.2003); *Sarchet v. Chater*, 78 F.3d

305, 307 (1996). If the evidence on which the ALJ relied does not support the conclusion, the decision cannot be upheld. *Blakes*, 331 F.3d at 569. For the reasons discussed above, the ALJ's findings at step four and step five, relating to Diskerud's ability to perform her past relevant work and other jobs in the national economy, are tainted. The ALJ's findings at step four and step five are not supported by substantial evidence and must be remanded for further consideration.

### III. CONCLUSION

For the reasons discussed in this Entry, the ALJ's conclusions are not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand). Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 02/19/2009

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana